UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TERRY DICKINSON,

    Plaintiff,

v.    Case No. 1:04-CV-737

ELECTROLUX HOME    HON. GORDON J. QUIST
PRODUCTS, INC.,

    Defendant.
_____/

## OPINION

Plaintiff, Terry Dickinson ("Dickinson"), filed a complaint against his former employer, Electrolux Home Products, Inc. ("EHP"), in Montcalm County Circuit Court on or about September 24, 2004, alleging that EHP breached an implied employment contract. Specifically, Dickinson claims that EHP breached a Retention Bonus Agreement with Dickinson by eliminating Dickinson's overtime pay. EHP removed the case to this Court on November 4, 2004, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Now before the Court is EHP's motion for summary judgment. For the reasons set forth below, the Court will grant the motion and dismiss Dickinson's complaint with prejudice.

## I. Facts

Dickinson was employed by EHP as a Maintenance Facilitator from June 1, 2003, until July 14, 2003, at EHP's Refrigerator Plant in Greenville, Michigan. In EHP parlance, a Facilitator is a supervisor. Dickinson's annual salary was $47,000, and his position was classified as exempt under the Fair Labor Standards Act.

Dickinson was one of three Maintenance Facilitators at the Greenville plant.  At least one Maintenance Facilitator was required to work whenever maintenance employees were working at the plant.  Because the Greenville plant operated twenty-four hours, seven days a week, and much of the routine maintenance work was performed during the weekends, at least one Maintenance Facilitator was required to be on site each weekend.  To meet this requirement, the Maintenance Facilitators rotated weekend shifts, which included twelve-hour shifts on both Saturday and Sunday.

At the time Dickinson was hired, EHP had a voluntary policy of paying salaried employees below Pay Grade 52 additional pay (overtime) for working on Saturday and Sunday.  Eligible employees were paid beyond their regular salaries at straight time for the hours worked on Saturday and at time-and-a-half for the hours worked on Sundays.  Dickinson was at Pay Grade 51 and, therefore, was eligible for overtime pay.  Dickinson knew that EHP had the right to change the overtime policy in any manner at any time.  (Dickinson Dep. at 71, Def.'s Br. Supp. Ex. D.)  In addition, although Dickinson usually worked at least one day on most weekends, whether Dickinson worked at all, including the specific day or days, depended upon his supervisor's discretion in preparing the schedule.  (Id. at 78-79.)

In October 2003, EHP announced its decision to close the Greenville plant.  Because the closure was to occur over a period of time, EHP found it necessary to retain certain "key employees" to ensure an orderly and efficient closure.  To achieve this goal, EHP decided to offer financial incentives to induce "key employees" to remain with EHP until the end.  EHP identified Maintenance Facilitators as "key employees" and offered them retention bonuses.

On February 10, 2004, Chris Pinkston ("Pinkston"), the Greenville plant Human Resources Manager, met with Dickinson to offer him a Retention Bonus Agreement (the "Agreement").  Under the Agreement, EHP would pay Dickinson a bonus of $50,000 if he remained employed with EHP

2

until no later than December 31, 2006. In particular, the Agreement stated: "Employee will continue his or her employment with the Company until the closure is complete, as determined by the Company, or until the Company releases him or her from duty, whichever is earlier."[1] (Agreement ¶ 1, Def.'s Br. Supp. Ex. C.) The Agreement provided for payment as follows:

> 3.    Provided Employee is actively employed on August 1, 2004, the Company will advance 20% of the retention bonus set forth above. Further, provided Employee is actively employed on August 1, 2005, the Company will advance an additional 30% of the retention bonus set forth above [sic] In the event Employee voluntarily terminates his or her employment before the Company releases him or her pursuant to Paragraph 1, Employee agrees to repay the amount advanced.
>
> 4.    The balance of the retention bonus shall be payable on the first regularly scheduled payday following the closure of the facility, the Company's release of Employee, or December 31, 2006, whichever occurs earlier.

(Id. ¶¶ 3, 4.) The purpose of the meeting was to discuss the Agreement. Pinkston and Dickinson did not discuss EHP's overtime policy or whether EHP would continue to require overtime work. (Dickinson Dep. at 70.) Dickinson understood that the Agreement was an incentive to remain with EHP until the plant closed. (Id. at 67.) Dickinson read the Agreement and signed it during the meeting.

In June 2004, EHP made changes to its various overtime policies to reduce costs. One of those changes was to eliminate overtime pay for salaried employees, including Dickinson. On June 22, 2004, Richard Schroeder, another Maintenance Facilitator, met with Dickinson and other salaried non-union supervisors to explain the change in overtime. Under the new policy, supervisors would continue to work weekends but would no longer receive overtime pay. Instead, supervisors would work a total of 48 hours per week, consisting of three eight-hour shifts during the week and two twelve-hour shifts on weekends, but would receive only their salary.

---

[1] The Agreement also provided that the employee would remain eligible to participate in EHP's Severance Benefit Plan.

3

In July 2004, Dickinson met with Pinkston regarding various matters, including a job offer that he had received. Dickinson resigned from his job during the meeting but refused to give EHP two weeks notice. Dickinson resigned because he objected to working 48 hours without any additional pay for the overtime work. (Id. at 82-83.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

As noted above, Dickinson alleged a claim for breach of implied employment contract in his complaint. In its opening brief in support of its motion for summary judgment, EHP construed Dickinson's claim as breach of employment contract based upon the "legitimate expectations theory" set forth in Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980). EHP argued that it is entitled to summary judgment on such a claim because: (1) Michigan courts have not extended the legitimate expectations theory of Toussaint beyond the arena of job security to cover an employer's compensation policy; and (2) even if Toussaint applied to

4

Dickinson's claim, there is no evidence that EHP made any promise to Dickinson regarding its overtime policy or that Dickinson had a legitimate expectation of receiving overtime compensation. EHP also argued that the Agreement did not create an employment contract, particularly with regard to the issue of overtime pay, because it was limited to the single issue of Dickinson continuing his employment with EHP.  In his response, Dickinson explained that his claim is that the Agreement is an express contract that impliedly incorporates the terms of Dickinson's employment relationship as they existed at the time he signed the Agreement.  That is, Dickinson argues, because EHP's existing policy was to pay him for overtime work, it was required to continue doing so.

      The Court begins its analysis with well-recognized rules of contract construction.  The primary goal of contract interpretation is to give effect to the parties' intent. <u>Mikonczyk v. Detroit Newspapers, Inc.</u>, 238 Mich. App. 347, 349-50, 605 N.W.2d 360, 362 (1999) (per curiam).  To achieve this goal, courts must interpret contracts "according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." <u>Kingsley v. Am. Cent. Life Ins. Co.</u>, 259 Mich. 53, 55, 242 N.W. 836, 836 (1932) (quoting <u>Imperial Fire Ins. Co. v. Coos County</u>, 151 U.S. 452, 463, 14 S. Ct. 379, 381 (1894)).  The court should interpret a contract, if possible, in a manner that reasonably gives effect to all provisions. <u>De Boer v. Geib</u>, 255 Mich. 542, 544, 238 N.W.226, 226 (1931); <u>see also</u> <u>Klapp v. United Ins. Group Agency, Inc.</u>, 468 Mich. 459, 468, 663 N.W.2d 447, 453 (2003) (stating that "courts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory").  A contract is ambiguous if the language is susceptible to two or more reasonable interpretations. <u>Petovello v. Murray</u>, 139 Mich. App. 639, 642, 362 N.W.2d 857, 858 (1984).  If language in a contract is unambiguous, interpretation is a matter of law for the court.  See <u>Quality Prods. &</u>

5

Concepts Co. v. Nagel Precision, Inc. , 469 Mich. 362, 375, 666 N.W.2d 251, 259 (2003). In such case, the court must enforce the contract as written and may not consider extrinsic evidence. See UAW-GM human Resource Ctr. v. KSL Recreation Corp., 228 Mich. App. 486, 491, 579 N.W.2d 411, 414 (1998).

EHP argues that the terms of the Agreement are clear and that it relates to the sole issue of EHP's promise to pay Dickinson a bonus of $50,000 if Dickinson continued to work for EHP until he was released, the plant closed, or December 31, 2006, whichever occurred first. EHP further notes that the Agreement does not address any EHP employment policy, let alone EHP's voluntary overtime policy and, therefore, the Agreement cannot bind EHP to a discretionary overtime policy not addressed in the Agreement. Dickinson argues that the parties' intent is a question of fact for the jury. Dickinson further argues that the Agreement can be valid and not rendered an illusory promise by EHP only if it is interpreted to incorporate the terms of the parties' existing employment relationship, including payment for overtime work.

The Court agrees with both parties to a certain extent. EHP is correct that the language of the Agreement is unambiguous, at least for purposes of the instant dispute. It provides that EHP will pay a $50,000 bonus to Dickinson if he continues his employment with EHP until the closure is complete or until EHP releases him. In addition, the subject of the Agreement is limited to the retention bonus. Nothing in the Agreement addresses EHP's overtime policy or suggests that EHP agreed to be bound to its discretionary overtime policy.

On the other hand, the Court agrees with Dickinson that certain terms are implied from the language of the Agreement. As stated in Harbor Land Company v. Township of Grosse Ile, 22 Mich. App. 192, 177 N.W.2d 176 (1970):

6

> A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used and the external facts, such as the surrounding circumstances; and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face.
>
> In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made.

Id. at 203-04, 177 N.W.2d 181 (quoting 17A C.J.S. Contracts § 328). The implied terms relative to the Agreement are those concerning Dickinson's employment as of the date he signed the Agreement. Those terms included employment as a Maintenance Facilitator at an annual salary of $47,000 and applicable benefits. The Court's agreement with Dickinson ends at this point. While Dickinson would also be entitled to pay for overtime work on Saturdays and Sundays, such entitlement would continue only so long as EHP adhered to its voluntary overtime policy. Dickinson concedes that he was an exempt employee, that EHP had no obligation to pay him for overtime, and that EHP could change the policy at its discretion. This was the case at the time Dickinson signed the Agreement, and it was a condition of employment that Dickinson had to live with going forward, because Dickinson admitted that the subject of overtime pay and/or EHP's overtime policy was never discussed in his meeting with Pinkston on February 10, 2004. Such an interpretation does not render the Agreement illusory, as Dickinson argues, because the terms of the Agreement dictate when and how it will pay the bonus. Therefore, EHP was entitled to change its overtime policy, and its decision to eliminate overtime pay did not breach the Agreement.

Based upon Dickinson's statements in his brief, the Court understands that Dickinson is not asserting an implied contract claim under the Toussaint "legitimate expectations" theory. In the event that the Court's understanding is wrong, and even if Toussaint were applicable to a dispute

regarding an employer's compensation policy, as in this case, the claim would fail because Dickinson has failed to present any evidence showing that he had a legitimate expectation of overtime compensation. As noted above, Dickinson admitted that he knew that EHP had the discretion to change its overtime policy at the time he signed the Agreement. Furthermore, although Dickinson worked most weekends, he admitted that whether he worked on weekends was within the discretion of his supervisor. Finally, Dickinson admitted that he did not discuss the overtime policy with Pinkston in their February 10, 2004, meeting, and he has failed to present any evidence to show that he in fact had a legitimate expectation of overtime compensation.

## IV.  Conclusion

For the foregoing reasons, the Court will grant EHP's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  September 30, 2005                          /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE